IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KENNETH JOE MAY; MARY ANN MAY;
STEVE SNOWDEN; and CINDY SNOWDEN          PLAINTIFFS


v.                    No. 4:13-cv-494-DPM


BHP BILLITON PETROLEUM (Fayetteville) LLC          DEFENDANT


## ORDER

**1.** Plaintiffs, the Mays and the Snowdens, own land in White County,

Arkansas, within the Fayetteville Shale. Plaintiffs entered into four mineral

leases, which BHP now holds. Each leased property is in the same township

and range. The Snowdens own property in sections 11 and 14; the Mays own

property in sections 23 and 26. There's been pooling; and the Arkansas Oil

and Gas Commission has ordered that each section be operated as a unit.

Before BHP acquired the leases, its predecessors in interest drilled a well in

each of the sections. BHP operates the wells in sections 14, 23, and 26; XTO

operates the well in section 11. Plaintiffs are getting royalty payments from

those wells. In 2013, BHP decided to suspend drilling in the Fayetteville Shale.

Plaintiffs allege that, without more drilling, they won't get the full benefit of

their leases. BHP counters that the producing well in each section satisfies the obligation to drill on plaintiffs' properties. Plaintiffs bring three claims against BHP: (1) abandonment; (2) violation of a statutory duty to develop each lease; and (3) breach of the implied covenant of reasonable development. Plaintiffs seek judgment as a matter of law that BHP has violated the implied covenant. BHP seeks summary judgment across the board.

**2. Experts**. Plaintiffs have moved to exclude BHP's experts; BHP has moved to exclude plaintiffs' experts. These issues must be resolved to settle the summary judgment record.

- **Plaintiffs' Motion**

Plaintiffs' motion to exclude BHP's experts, Henry Coutret and Robert McGowen, is denied. These witnesses will testify about the steps a prudent operator would take before drilling development wells. Plaintiffs argue that these opinions are too generic and distant from this case; they're thus unreliable because Coutret and McGowen don't know whether BHP actually took those steps. But independent analyses will help the jury understand how operators make drilling decisions. The Court recognizes that these experts, in a few instances, said that BHP had taken specific steps or done specific

studies. But any misstatement of fact or unfounded assumption can be fully ventilated on cross.

- **BHP's Motion**

BHP's motion to exclude plaintiffs' experts is granted in part and denied in part. The Court excludes the testimony of John McArthur, but allows the testimony of David Henderson, James Williams, and George Hite.

*First*, McArthur. He's a lawyer with decades of experience litigating mineral cases. He's written extensively about mineral leases, including a recently published book about, among other implied covenants, the implied covenant of reasonable development. John Burritt McArthur, Oil and Gas Implied Covenants for the 21st Century: The Next Steps in the Evolution (2014). Plaintiffs proffer McArthur to testify about mineral lessee customs and practices and about the definitions of terms in mineral leases. Though couched as observations about industry customs and practices, at bottom McArthur wants to tell the jury what the law requires about this implied covenant. The Court will do that telling. *Williams v. TESCO Services, Inc.*, 719 F.3d 968, 976 (8th Cir. 2013).

Some of McArthur's testimony, moreover, would unfairly prejudice

BHP, and some of it would be unnecessarily cumulative. FED. R. EVID. 403. Presented with McArthur's impressive background in the law of implied covenants, a jury would find it hard to reconcile any inconsistencies between the jury instructions and his testimony. And to the extent plaintiffs offer McArthur to talk about industry and lease terms, his testimony will be cumulative. The plaintiffs and BHP representatives can discuss the terms of these leases. The other well-qualified experts can flesh out any industry-specific terms that the jury might be unfamiliar with.

*Second*, Henderson. He is a geophysicist with more than forty years' experience as an operator. Like BHP's experts, Henderson will testify about the kinds of tests prudent operators conduct to decide whether to drill a well. BHP moves to exclude this testimony because Henderson did not actually perform any of those tests on plaintiffs' properties. Henderson, though, testified on deposition that before drilling in proven gas fields, such as the Fayetteville Shale, prudent operators need not conduct the full battery of tests. Instead, prudent operators base drilling decisions on general knowledge about the formation and the presence of other wells in the area.

BHP also argues that Henderson's opinions stray from those a

-4-

geophysicist is qualified to give. But Henderson's experience qualifies him to give his opinions. *U.S. v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006). BHP can attack his credentials on cross.

*Third*, Williams. He is an economist with decades of experience in the oil-and-gas business. BHP moves to exclude his testimony because he didn't rely on his expertise to reach his opinions. In his deposition, Williams testified that anyone with computer skills could have gathered the publicly available records he used to reach his opinions. Therefore, BHP argues, Williams's expertise didn't inform his opinions, and his testimony won't help the jury. FED. R. EVID. 702(a).

This argument over-simplifies Williams's testimony. Williams collected about half a million oil-and-gas production records, spanning a decade, from the Arkansas Oil and Gas Commission. He then organized those records into well-by-well and operator-by-operator formats. From there, Williams observed that BHP's competitors in the area increased drilling at a much faster pace than BHP did during the same period. Williams also testified that BHP concentrated its new drilling on exploratory wells, not development wells. BHP's defense, in part, is that no prudent operator would have drilled

on plaintiffs' leases between the time BHP acquired those leases and when plaintiffs sued. Williams's opinions offer an overview of what other (maybe prudent, maybe imprudent) operators in the area were doing. Although a lay person might have been able to gather the same records, Williams used his economics training to synthesize them. His testimony is relevant and will help the jury understand the facts in this case. Williams must, though, limit his opinions to his description and analysis of the Commission data.

*Fourth*, Hite. He is a mechanical engineer with fifty years' experience in the oil-and-gas business. Like Henderson, Hite has concluded that prudent operators do not conduct extensive geological and economic tests before drilling development wells in areas proven to have natural gas. He has also concluded that prudent operators chase the operating costs of the low-cost operator in an area; prudent operators don't leave an area until market conditions improve. In short, drawing from his years of experience, Hite can help the jury understand how prudent operators within a resource play behave in relation to each other. He may testify.

**3. Abandonment & Statutory Claims.** BHP is entitled to judgment on the abandonment and statutory claims. The statute that BHP allegedly

violated doesn't create an independent cause of action. ARK. CODE ANN. § 15-73-207; *Collins v. SEECO, Inc., et al.*, 2012 WL2309080, at *1 (E.D. Ark. 18 June 2012). On abandonment, everyone agrees that BHP (or XTO in section 11) operates a well on each lease that produces gas in paying quantities. And no one disputes that BHP considers plaintiffs' properties when making its development plans each year. No genuine factual dispute exists: BHP hasn't abandoned plaintiffs' properties, intending *never* to return. *Buffalo Zinc & Copper Co. v. Crump*, 70 Ark. 525, 538, 69 S.W. 572, 576 (1902).

**4. Section 11.** BHP is also entitled to summary judgment on the implied-covenant claim on the section-11 lease. The Commission designated XTO the operator for this drilling unit. Plaintiffs' experts have offered no opinion about what BHP, as a non-operator, should have done to develop section 11 further. № 69, *Exhibit 32 at 187–88* (deposition pagination); № 69, *Exhibit 34 at 129–30* (deposition pagination); № 69, *Exhibit 33 at 115–16* (deposition pagination). McArthur, whose testimony the Court has excluded, said that BHP could have proposed that XTO drill more and could have taken the lead in "trying" to accomplish that goal. № 69, *Exhibit 33 at 114* (deposition pagination). But McArthur doesn't know what BHP did or did not propose

-7-

to XTO. № 69, *Exhibit 33 at 115* (deposition pagination). On this record, a jury would have to speculate to find a breach of the implied covenant in the section-11 lease. *Elam v. Regions Financial Corporation*, 601 F.3d 873, 877 (8th Cir. 2010).

**5. Sections 14, 23, and 26.** The core of the case is whether BHP violated the implied covenant of reasonable development in the remaining leases. *Ezell v. Oil Associates, Inc.*, 180 Ark. 802, 807–08, 22 S.W.2d 1015, 1017 (1930); *see generally*, Thomas A. Daily & W. Christopher Barrier, STILL FUGACIOUS AFTER ALL THESE YEARS: A SEQUEL TO THE BASIC PRIMER ON ARKANSAS OIL AND GAS LAW, 35 U. Ark. Little Rock L. Rev. 357, 383–84 (2013). Henry Coutret, a BHP expert, testified that BHP would have lost money, or made a pittance, by drilling more wells on plaintiffs' properties. No prudent operator, Coutret continued, would drill at a loss. № 69, *Exhibit 25 at BHP-5316*. Rohan Goudge, a BHP representative, said BHP's decision to postpone drilling protects the plaintiffs' interests: they, too, should want bigger profits from the leases. № 69, *Exhibit 16 at 80* (deposition pagination). Under BHP's current schedule, it won't resume drilling in the Fayetteville Shale until 2023; and gas from plaintiffs' sections won't be put on line for sale until 2033–34. № 69, *Exhibit 38*.

-8-

Plaintiffs counter that waiting two decades for royalties from more wells is too long. Their interests and BHP's, plaintiffs insist, have diverged. Plaintiffs' expert Hite agreed that twenty-plus years is too long a wait. The Fayetteville Shale has gas for the taking. № 69, *Exhibit 32 at 49* (deposition pagination). And instead of waiting for market conditions to change, Hite said that BHP should be striving to bring its costs of production in line with those operators in the Fayetteville Shale who are currently drilling profitably. № 69, *Exhibit 32 at 55–58* (deposition pagination).

A jury could find that a reasonable and prudent operator, acting for the benefit of all parties to these leases, would have continued developing sections 14, 23, and 26. Issues of material fact exist. These include whether a prudent operator *could* have drilled profitably on plaintiffs' leases, and, if so, whether BHP acted imprudently by not drilling more wells. BHP's fact-based request for summary judgment is denied.

**6. The Developed Unit Statute.** BHP argues that, as a matter of law, it has fulfilled its obligations to drill on plaintiffs' leases.  Here, BHP stands on a statute. A drilling unit "shall constitute *a developed unit* as long as *a well* is located thereon that is capable of producing oil or gas in paying quantities."

ARK. CODE. ANN. § 15-72-302(b)(2)(A) (emphasis added). It's undisputed that each of these leases is within a developed unit because there's a well in each section. But does this statute mean BHP has no duty to develop the leases further?

There's not much precedent. The leading treatise speculates that disputes about developing within drilling units either don't happen or are worked out. Patrick H. Martin and Bruce M. Kramer, WILLIAMS & MEYERS, OIL AND GAS LAW, § 955 (LexisNexis Matthew Bender 2014). In *Christmas v. Raley*, the Arkansas Supreme Court held that the covenant is broken when the lessee stopped producing gas in commercial quantities. 260 Ark. 150, 155, 539 S.W.2d 405, 408 (1976). But here, unlike in *Christmas*, each of plaintiffs' properties is within a section with a well producing gas in commercial quantities. The Kansas Supreme Court, citing *Christmas*, has held that the implied covenant exists even if there are unitized operations. *Parkin v. State Corporation Commission of Kansas*, 234 Kan. 994, 1007–09, 677 P.2d 991, 1002–03 (Kan. 1984). Kansas's conservation statutes, unlike Arkansas's, define "waste" to include economic waste. *Compare* KAN. STAT. ANN. § 55-702 *and* ARK. CODE ANN. § 15-72-102(15). Other cases have held that, when part of leased

-10-

property is within a unit and the remainder without, the implied covenant still applies to the part of the property outside the unit. *E.g.*, *Mize v. Exxon Corporation*, 640 F.2d 637, 641 (5th Cir. 1981).

For good reason, BHP doesn't argue that the law will not allow drilling more wells on these developed leases. The statute BHP relies on gives the Arkansas Oil and Gas Commission authority to specify the number of wells in each unit. ARK. CODE ANN. § 15-72-302(b)(2)(B)(i). The Commission has adopted a regulation that sixteen wells may be drilled in each section in the Fayetteville Shale. ARK. ADMIN. CODE 178.00.001–B-43(c) & (i)(4).

A previous version of the statute—which would have helped BHP's argument—defined a "drilling unit" as the area that could be covered by one well. 2003 Ark. Acts 964, § 1. The current statute is concerned with how many wells a section can support without wasting resources. *Ibid*. Moreover, even though it didn't create an independent cause of action, the General Assembly has made clear that lessors and lessees need to develop natural gas reserves to strengthen the State's economy. ARK. CODE ANN. § 15-73-207; 2009 Ark. Acts 719, § 2 (emergency clause).

Although none of these statutes or cases is directly in point, the

-11-

principles behind them are. Those principles persuade the Court that the implied covenant of reasonable development survives pooling and unitization. Otherwise, operators could hold an entire section with only one well, but couldn't do so on smaller leases where there was no pooling. BHP's reading of the statute would allow lessees, with minimal development, to hold swathes of the State's natural resources for extended periods. That result would eliminate the protections that Arkansas law has long afforded mineral lessors and ignore the General Assembly's intention to promote development of Arkansas's natural gas.

**7. Motion to Strike.** BHP's motion to strike Hite's supplemental report is denied. Hite submitted his first report on the Court's deadline. He said that he'd supplement his report with a damages opinion after reviewing testimony and documents he believed would be forthcoming from BHP. Hite said he'd need about a month after getting those materials to supplement. The deposition of Greg McCain, BHP's corporate representative, was scheduled for late January 2015. Counsel for BHP had a medical issue arise and had to reschedule McCain's deposition for mid-February 2015. McCain's testimony wasn't as informative as Hite had expected. Plaintiffs also took the deposition

-12-

of Rohan Goudge, another BHP representative, in mid-March 2015. Hite found that testimony lacking in helpful particulars too. Hite therefore grounded his somewhat belated supplemental opinion about damages in more general principles.

Had plaintiffs taken McCain's deposition on the original date, Hite could have produced his supplemental opinion in late February, which would have given BHP's counsel ample time to review it before taking Hite's deposition in mid-March. Because trial has been postponed, BHP will not be prejudiced by now having to address Hite's supplemental opinion. BHP may depose Hite fully about damages and develop rebuttal testimony. Plaintiffs may take a deposition covering that new rebuttal testimony if they want to do so.

**8. Notice.** The Court appreciates the parties' briefs about the Eighth Circuit Court of Appeals' decision in *Lewis v. Enerquest Oil and Gas, LLC,* 2015 WL 4035254 (8th Cir. 1 July 2015). It's undisputed that, before filing suit, the Mays gave notice of their claims to BHP. It's also undisputed that a BHP representative responded to the Mays' letter. This happened too before litigation began. This lessee's pre-suit position was unequivocal and clear.

-13-

"BHP has fully met the requirements of the Leases and is under no further obligation to drill additional wells on the Leases or lands pooled therewith." № 115-2. The Mays' claims can go forward.

It's also undisputed that the Snowdens didn't give BHP pre-suit notice. They argue they didn't have to because their leases were silent about any obligation to do so. Because the question wasn't preserved, the *Lewis* court didn't rule on whether Arkansas common law requires pre-suit notice of an alleged breach of the implied covenant. *Lewis*, 2015 WL 4035254, at *2. And this Court doesn't need to answer the question here. In light of BHP's undisputed future drilling schedule, and of the company's strongly worded response to the Mays' letter, no pre-suit notice from the Snowdens was required. It would have been useless. *Pender v. McKee*, 266 Ark. 18, 37, 582 S.W.2d 929, 939 (1979) (*en banc*). The whole point of notice is to give the lessee an opportunity to cure short of litigation. BHP's cure is decades away. The Snowdens' implied-covenant claim for section 14 can go forward too.

BHP's notice-based motion to file another brief, and to amend its answer, is granted in part and denied in part. The Court needs no further briefing. BHP's motion to amend its answer is granted; and the proposed

-14-

amended answer is deemed filed.

**9. Motions in Limine.** The parties have filed several motions in limine.

- **Plaintiffs' Motions**

Plaintiffs' motion to prevent BHP from denying that its actions affecting the Fayetteville Shale as a whole are relevant, № *87*, is denied. BHP has consistently argued that its drilling schedule for the Fayetteville Shale would have been the same even if it hadn't shifted its energies to liquids-rich fields. If that's true, and consistent with actions of a prudent operator, then BHP's actions in the Fayetteville Shale would be irrelevant. BHP is free to make that argument.

Plaintiffs' motion to exclude testimony about BHP's plans to drill in the future, № *88*, is denied. BHP is free to defend with these important and relevant facts.

Plaintiffs' motion to prevent BHP from arguing that it hasn't violated any *express* lease provision, № *90*, is denied. BHP can make this fair, but weak, point if it wants.

Plaintiffs' motion to prevent BHP from mentioning that it has complied with Arkansas Oil and Gas Commission rules and regulations, № *91*, is

denied. That point is fair game. The Court will give a limiting instruction, though, that the Commission and the jury face different questions.

Finally, plaintiffs' motion to prevent BHP from calling witnesses or introducing documents not disclosed during discovery, № 92, is denied without prejudice. BHP must follow the Rules and the Scheduling Order. But the Court declines to issue an advisory opinion.

- **BHP's Motion**

BHP has filed an omnibus motion, № 96, which is divided into (A)–(M). Under each, BHP has moved for a specific evidentiary ruling. The Court will rule on each subheading as though it were a separate motion.

Motions *(A)–(F)* are denied with a caveat. BHP seeks to exclude evidence of its business decisions regarding the Fayetteville Shale as a whole. BHP's Fayetteville Shale decisions affected plaintiffs' leases. And this evidence gives context to the plaintiffs' claims. The evidence is relevant. But the Court will not allow cumulative background or confusing evidence.

Motion *(G)* is granted as modified. This case cannot be tried without some references to money. (BHP's position is that no prudent operator could have turned a profit drilling on plaintiffs' leases.) Plaintiffs may not, however,

-16-

introduce evidence about BHP's corporate-wide finances, profits, or revenues. Nor may plaintiffs introduce evidence comparing their wealth with BHP's.

Motion *(H)* is granted as modified. At trial, the parties cannot practicably omit every reference to BHP's mineral leaseholds outside the Fayetteville Shale. But plaintiffs may not introduce evidence about the operations, customs, and practices of operators in plays other than the Fayetteville Shale. That evidence is irrelevant to whether a prudent operator would have drilled on plaintiffs' leases.

The motion to prevent plaintiffs from saying "fracturing" or "fracking," *(I)*, is denied. The shorthand is common, accurate enough, and not unfairly prejudicial.

The motion to exclude expert opinions provided after the discovery deadline, *(J)*, is denied. Hite's supplemental opinion, and any rebuttal opinion from a BHP expert, are coming in. On any other new opinions, BHP is right on the law in general, but the Court declines to enter an advisory ruling.

The motion to prevent plaintiffs from arguing or testifying that BHP delayed producing or didn't produce documents during discovery, *(K)*, is granted.

-17-

The motion to exclude inflammatory language, *(L)*, is denied without prejudice. The Court has no doubt that all counsel will adhere to the highest standards of our profession, as they have done.

The motion to prevent plaintiffs from introducing evidence about BHP's insurance coverage, *(M)*, is granted. It's irrelevant and unfairly prejudicial.

**10. Sealing?** When it studied the record, the Court didn't see any BHP proprietary information or trade secrets. Perhaps the Court overlooked it. Unless by 21 August 2015 BHP gives *specific* reasons for keeping *specific* pages or documents under seal, the Court will unseal № 59, 60, 66–70, 73–74, 77–78, 80–81, 85–89, 93–98, 104, 106, and 109–113, and all related exhibits.

\*  \*  \*

Plaintiffs' motion for partial summary judgment, № 59, denied. BHP's motion for summary judgment, № 66, granted in part and denied in part. BHP's motion to strike, № 63, denied. BHP's motion to amend its answer and to file a supplemental brief, № 117, granted in part and denied in part. Proposed amended answer, № 117-1, deemed filed. Plaintiffs' motions in limine, № 87, 88, 90 & 91, denied. Plaintiffs' motion in limine, № 92, denied without prejudice. Plaintiffs' motion to exclude BHP's experts, № 89, denied.

-18-

BHP's motion to exclude plaintiffs' experts, № 94, granted in part and denied in part. McArthur cannot give expert testimony. BHP's motion in limine, № 96, granted in part and denied in part. Plaintiffs' claims for breach of the implied covenant of reasonable development on the leases in sections 14, 23, and 26 remain for trial. A Fourth Amended Final Scheduling Order will issue.

So Ordered.

*D.P. Marshall Jr.*

D.P. Marshall Jr.
United States District Judge

29 July 2015