IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KENNETH JOE MAY; MARY ANN MAY;
STEVE SNOWDEN; and CINDY SNOWDEN                PLAINTIFFS

v.                    No. 4:13-cv-494-DPM

BHP BILLITON PETROLEUM (Fayetteville) LLC        DEFENDANT

ORDER

**1.** Some loose ends. The Court appreciates the timely exhibit copies. We'll go with thirty minute openings. BHP's renewed objections on damages issues are overruled for the reasons previously stated. The Court grants BHP a continuing objection on the damages issues so we don't have to keep covering this ground for preservation purposes. The Court will add the requested "if any" in 1.01. The Court will consider adding this new sentence at the end of this paragraph: "The Mays and the Snowdens must prove any lost royalties with reasonable certainty." Plaintiffs should ponder this proposal; and we'll address it Monday morning. The Court appreciates BHP's commitment not to argue that any damages award would result in a double recovery. № 178 at 4. With that promise, the Court agrees that no one should mention the credit/equitible lien until the Court makes a final decision about whether (and, if so, how) the jury should be informed.

**2.** The Court appreciates the parties' new filings on evidentiary issues, № 173 & 176. This case is about three leases. But it's now clear from the discovery that BHP did not make lease-specific decisions about whether to drill more wells. Instead, BHP made the decisions on a Fayetteville-Shale-wide basis. Plaintiffs are entitled to offer evidence about BHP's decision making—so the jury can decide if BHP was a reasonable and prudent operator of these leases. Proof about other plays should be kept to the bare minimum: we're not going to try the particulars (e.g., geology or profitability) of the Eagle Ford, the Haynesville, or the Permian; we're not going to try BHP's decisions to move particular rigs to other plays. But for context, and because it is how BHP made and has explained its decisions on the leases, Plaintiffs may offer proof about BHP's Fayetteville-Shale-wide decisions through the "Evergreen" process. Plaintiffs must, however, avoid the temptation to try a company-wide case. They must stay within arms length of these three leases.

The Court overrules BHP's objections about the 2012–2013 slow down, suspension, and stop in the Fayetteville Shale. First, Hite's testimony is that more wells should have been drilled in 2011–2012. If Plaintiffs are correct on

the budgeting, there's some temporal overlap. BHP can offer proof on its side of the story: that the money available didn't drive its drilling decisions. Second, BHP made decisions about these leases on a Shale-wide basis. So what was happening Shale-wide is relevant on development of these three leases. Third, part of BHP's defense (as the Court understands it) is that more wells on these leases made no economic sense for the property owners or the company. The facts about what was happening in the natural gas market in 2013 are coming in on damages; how BHP responded to these facts in the Fayetteville Shale is part of the story of this case. Fourth, the 2012/2013 facts can be argued, by reasonable inference, as evidence that BHP was not really committed to expanding operations in the Fayetteville Shale in general, or on the plaintiffs' leases in particular, in 2011 and 2012. There are other reasonable inferences and explanations for the drilling reduction. And BHP is, of course, free to argue its side to the jury.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

1 April 2016